

**U.S. Department of Justice**

***Rachael S. Rollins***
*United States Attorney*
*District of Massachusetts*

*Main Reception: (617) 748-3100*          *John Joseph Moakley United States Courthouse*
                                          *1 Courthouse Way*
                                          *Suite 9200*
                                          *Boston, Massachusetts 02210*

May 19, 2022

Stephen Huggard, Esq.
470 Atlantic Ave, 4th Floor
Boston, MA 02210

      Re:    United States v. Jacquelyn Mahoney
                Criminal No.

Dear Mr. Huggard:

      The United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Jacquelyn Mahoney ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

      1.    Change of Plea

      As soon as practicable, Defendant will waive Indictment and plead guilty to Count One of the Information: possession with intent to distribute and distribution of 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(B)(viii). Defendant admits that Defendant committed the crime specified in this count and is in fact guilty.

      The Defendant agrees to the attachment statement of facts.

      2.    Penalties

      Defendant faces the following mandatory minimum and maximum penalties: incarceration for a mandatory minimum term of five years and up to forty years in prison; supervised release for at least four years; a fine of up to $5,000,000; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

      3.    Sentencing Guidelines

      The U.S. Attorney agrees, based on the following calculations, that Defendant's total

1

"offense level" under the Guidelines is 29:

    a) Defendant's base offense level is 32 because the defendant possessed with intent to distribute at least 150 grams but less than 500 grams of Methamphetamine (actual) (USSG § 2D1.1(c)(4)); and

    b) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crime (USSG § 3E1.1).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crime to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

    4.    <u>Sentence Recommendation</u>

The U.S. Attorney agrees to recommend the following sentence to the Court:

    a) 80 months of incarceration;

    b) a fine as calculated by the Court at sentencing, excluding departures, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

    c) 48 months of supervised release;

    d) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court by the date of sentencing;

    5.    <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct

appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

b) Defendant will not challenge Defendant's <u>sentence,</u> including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence, regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6.  <u>Civil Liability</u>

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

7.  <u>Breach of Plea Agreement</u>

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant

any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

8. Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

9. Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\* \* \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Benjamin A. Saltzman.

Sincerely,

RACHAEL S. ROLLINS
United States Attorney

By: _____
ANNE L. PARUTI
Chief, Major Crimes Unit
MARK GRADY
Deputy Chief, Major Crimes Unit

_____
BENJAMIN A. SALTZMAN
Assistant U.S. Attorney

4

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crime I am pleading guilty to, and the mandatory minimum and maximum penalties for that crime. I have discussed the Sentencing Guidelines with my lawyer and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me and we have had enough time to meet and discuss my case. We have discussed the charge against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offense. I believe this Agreement is in my best interest.

_____
Jacquelyn Mahoney
Defendant

Date: 6/24/22

I certify that Jacquelyn Mahoney has read this Agreement and that we have discussed what it means. I believe Jacquelyn Mahoney understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
Stephen Huggard
Attorney for Defendant

Date: 6/24/2022

5

## STATEMENT OF FACTS

- On or about September 29, 2020, the Defendant sold approximately one ounce of methamphetamine to a Confidential Source ("CS") for $904.

- On or about October 13, 2020, the Defendant sold approximately one ounce of methamphetamine to a CS for $904.

- On or about October 28, 2020, the Defendant sold approximately two ounces of methamphetamine to a CS for $2,000.

- On or about February 17, 2022, the Defendant sold approximately two ounces of methamphetamine to an undercover law enforcement agent ("UC") for $1,700.

- Subsequent testing confirmed that the methamphetamine sold by Mahoney on or about September 29, 2020, October 28, 2020, and February 17, 2022 had a purity level of greater than 95%.